J-S35004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 578 EDA 2019 |

Appeal from the Order Entered January 28, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0002974-2015,
FID: 51-FN-002498-2015

BEFORE:   OLSON, J., STABILE, J., and STRASSBURGER, J.[*]

DISSENTING MEMORANDUM BY OLSON, J.:        **FILED JANUARY 08, 2020**

I believe this Court lacks jurisdiction over the instant appeal and that the learned Majority misapplies the collateral order doctrine to reach the merits of the parties' dispute.  Hence, for the reasons that follow, I respectfully dissent.

My analysis begins with the trial court's Rule 1925(a) opinion.  In its opinion, the trial court explained that on January 28, 2019, it "**temporarily suspended** [Father's] visits pending the Child's therapist recommendation" after it found that Father posed a grave threat to Child.  Trial Court Opinion, 4/2/19, at 5 (emphasis added).  The court's grave threat determination rested upon its finding that Child presented with a visible bruise on his forehead and that a Community Umbrella Agency (CUA) worker testified credibly that, "Child

---

[*] Retired Senior Judge assigned to the Superior Court.

became visibly agitated as the therapist started mentioning Father[,]" that Child "ha[d] been doing 'a lot better in the home'" since visitation with Father was suspended,[1] and that the "Child could have suffered mental trauma which could impede his physical and mental development in the future." *Id.* at 4-5. Thus, the trial court opinion clarifies that, in January 2019, it temporarily suspended visitation to investigate the cause of Child's injury and to afford the therapist an opportunity to consider what impact Father's visits had on Child.

Despite these undisputed facts, Father lodged an appeal claiming that the trial court improperly "outsource[d] to a therapist the determination of when his visits with Child may or may not resume." Majority Memorandum at *8; *see also* Father's Brief at 3-4. Accepting Father's characterization of the facts, the learned Majority first holds that Father raised an appealable claim under the collateral order doctrine[2] and then agrees with Father that the trial court wrongfully abandoned its judicial duties. *Id.* at *8-10. Specifically, the Majority concludes that Father's claim is "clearly separable from and collateral to the main cause of action, no matter how that cause of action is defined."

_____

[1] Due to the incident that occurred in December 2018, Father's visitation was already suspended on or before January 19, 2019. *See* Resource Family Reporting Form, 1/19/19, at 2.

[2] Pennsylvania Rule of Appellate Procedure 313 defines a collateral order as one that: "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." *In re Bridgeport Fire Litigation*, 51 A.3d 224, n.8 (Pa. Super. 2012); Pa.R.A.P. 313(b).

*Id.* at \*8. Next, the Majority explains that, "because this order resulted in a complete denial of visitation," it meets both the second and third prong of the collateral order doctrine. *Id.* at \*7. Turning to the merits, the Majority holds that the trial court did, in fact, err by "outsourcing its decision of when those visits may or may not resume to a therapist" and as such, vacated the order and remanded for further proceedings. *Id.* at \*10.

A thorough review of the certified record reveals that the temporary suspension of Father's visitation did not produce a prolonged or sustained loss of Father's interest and that the trial court – throughout these proceedings – always retained responsibility for determining when visitation was appropriate.

In this case, Father did not have any contact with Child prior to the commencement of judicial proceedings. Indeed, Child was adjudicated dependent on November 24, 2015. Trial Court Order, 11/24/15, at 1. Father, however, did not "show[] up and [make] himself available" until May 2, 2017. Trial Court Opinion, 4/2/19, at 1-2. Following a paternity test, on July 17, 2017, the trial court ordered supervised visits for Father.[3] *Id.*; *see also* Trial Court Order, 5/2/17, at 2; Trial Court Order, 7/17/17, at 1-2. Subsequently, the court conducted a series of regularly scheduled permanency review hearings to monitor Father's compliance with his objectives. *See* Trial Court

_____

[3] The trial court terminated Mother's parental rights on July 17, 2017. *See Interest of L.B.*, ___ A.3d.___, 2534 EDA 2017 (Pa. Super. 2018) (unpublished memorandum), at 1-17.

Order, 10/3/17, at 1-2; Trial Court Order, 2/2/18, at 1-2; Trial Court Order, 4/30/18, at 1-2; Trial Court Order, 7/30/18, at 1-2. Eventually, on October 29, 2018, the court increased Father's visitation rights to weekly overnight visits, every Friday to Sunday. Trial Court Order, 10/29/18, at 2. This was the first time Father was permitted to engage in unsupervised visits with Child. In December 2018, however, visitation was suspended after the Child reported that Father hit him and the Child "had a visible bruise on his forehead." N.T. Permanency Review Hearing, 1/28/19, at 5.

On January 28, 2019, the trial court conducted a permanency review hearing. N.T. Permanency Review Hearing, 1/28/19, at 1-19. During the hearing, Shanese Streams, the CUA case manager, testified about the incident that occurred in December 2018 and Child's subsequent behavior. *Id*. at 4-15. Thereafter, the trial court asked for the "recommendations" of the parties and the following exchange occurred:

> **The court**: Okay. Child is to remain as committed/remain as placed. Visitation will remain status quo, **can begin upon the therapist's recommendation. When visitation eventually is re[-]established, I want family therapy to begin, as well. Let's give it a date.**
>
> **[Father's Counsel]**: I guess that family therapy would be dad, because I think it was a problem before, whether it was the foster parent or dad. If we can just make that clear –
>
> **The court**: Family therapy –
>
> **[Father's Counsel]**: --through family therapy
>
> **The court**: --when I'm saying family therapy, I mean with [F]ather.

**[Father's Counsel]**:  Okay.

**The court**: But that is only upon the – that will only begin upon the recommendation of the therapist.  Give it a date.  We can send it out.

*Id.* at 17 (emphasis added).  Then, the trial court scheduled a permanency review hearing for April 16, 2019 at 1:30 p.m.  *Id.* at 17-18.

Upon review, I disagree with the Majority's conclusion that the trial court improperly outsourced its decision regarding Father's visitation to a therapist.  Indeed, the aforementioned exchange proves that no outsourcing occurred.  The trial court expressly declared that the suspension was temporary, asked for a recommendation, and scheduled a subsequent permanency hearing for April 2019 to receive the requested input.  This strongly implies that the court – itself - would remain the ultimate arbiter of Father's visitation rights and make the determination of whether Father's visits could resume.  By vacating the trial court's order and remanding for further proceedings, the Majority simply directs the court to do exactly what it already intended to do: decide whether Father's visits can resume upon hearing a recommendation by the therapist.[4]

Moreover, I disagree with the Majority's conclusion that the instant appeal meets the third prong of the collateral order doctrine because the order

---

[4] It is ironic, in my view, that the Majority's remand order essentially directs the trial court to conduct an assessment it has already made based, invariably, on input it has already requested.  This is a misapplication of the collateral order doctrine and a misuse of scarce judicial resources.

resulted "in the complete denial of visitation." ***See*** Majority Memorandum at *7; ***see also*** Pa.R.A.P 313(b)(3) (explaining that "the question presented [must] be such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost"). Previously, this Court has permitted appeals only when the denial of visitation results in a "'prolonged, indefinite or a permanent loss of a substantial private interest.'" ***In re J.S.C.***, 851 A.2d 189, 191 (Pa. Super. 2004), *quoting* ***In Interest of Rhine***, 456 A.2d 608, 612 (Pa. Super. 1983). Thus, short denials of visitation are generally not appealable. Here, the trial court denied Father visitation from January 28, 2019 until April 16, 2019, when it scheduled a permanency hearing to review the matter. N.T. Permanency Review Hearing, 1/28/19, at 17-18. Moreover, upon suspending Father's visitation, the trial court stated: "**[w]hen visitation eventually is re[-]established**, I want family therapy to begin, as well." ***Id***. at 17 (emphasis added). Both acts evidence the trial court's intent to ensure that Father's visitations rights were only suspended for a short period of time. Accordingly, I would conclude that the instant appeal does not meet the third prong of the collateral order doctrine.

The Majority's decision to permit Father's appeal exacerbates the inconsistent application of the collateral order doctrine in the context of dependency matters, which we have acknowledged in recent cases. ***See Interest of J.M.***, 2019 WL 4385685, at *8 (Pa. Super. Sept. 13, 2019) (explaining that consistent application of the collateral order doctrine has alluded this Court in the context of dependency matters). Notably, this Court's

- 6 -

recent decision in **In re S.W.**, 2019 WL 5078918, at \*1 (Pa. Super. Oct. 10, 2019) (memorandum opinion by Stabile, J.) illustrates this point. **Id.**

The pertinent facts of **S.W.** are as follows. The trial court adjudicated S.W. and L.J.-S ("the Children") dependent on June 21, 2017. **Id.** Eventually, S.S. ("Mother") was permitted to have "line-of-sight/line-of-hearing visits only." **Id.** On February 14, 2019, however, the trial court suspended Mother's visits "temporarily, until a recommendation is received from the child's therapist" after a CUA case manager "expressed concern that Mother made inappropriate statements to the Children during visits, which appeared to cause negative reactions." **Id.** at \*1-2. Mother appealed. **Id.** at \*3. As in the present case, we first addressed whether this Court had jurisdiction to consider the merits of the appeal. **Id.** After concluding that the "orders [were] not final," we proceeded to an analysis of the collateral order doctrine. **Id.** at \*4.

Ultimately, **S.W.** concluded that "the February 14, 2019 orders fail to satisfy the third prong of the collateral order doctrine."[5] **Id.** Specifically, we held that "Mother's claims will not be irreparably lost if we postpone review." **Id.**; *quoting* **In re Estate of McAleer**, 194 A.3d 587, 593 (Pa. Super. 2018),

---

[5] Like in **J.M.**, the Court in **S.W.** "decline[d] to consider whether the issue of Mother's visitation is separable from and collateral to the main cause of action of the Children's dependency." **In re S.W.**, 2019 WL 5078918 at \*4; **see also Interest of J.M.**, 2019 WL 4385685, at \*11. But, **S.W.** concluded that Mother's appeal "clear[ly] . . . satisfies the second prong of the collateral order doctrine, as Mother has a constitutional right to visits with the Children." **Id.**

*appeal granted*, 201 A.3d 724 (Pa 2019). In reaching this decision, we reasoned that the trial court merely "suspended Mother's visitation with the Children temporarily, pending a recommendation from a therapist:" it did not deny visits indefinitely. **Id.** Therefore, we concluded that, awaiting the trial court's "ultimate decision as to whether to suspend visits" would ensure a "more developed record," and would "avoid the possibility of expending time and resources considering the merits of Mother's appeal, only for the [trial] court to reinstate visits, rendering our efforts inconsequential." **Id.**

Herein, this Court is presented with the exact same order as **S.W.** This time, however, the panel reaches the opposite conclusion. In doing so, it perpetuates this Court's inconsistent application of the collateral order doctrine in the context of dependency litigation. For each of the foregoing reasons, I respectfully dissent.